## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

BENJAMIN C.,

                                    Plaintiff,

          v.                                        5:21-CV-872
                                                    (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

DANA W. DUNCAN, ESQ., and
DAVID F. CHERMOL, ESQ., for Plaintiff

JESSICA RICHARDS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, with the consent of the parties, to conduct all proceedings and enter final judgment, pursuant to the Social Security Pilot Program, and in accordance with the provisions of N.D.N.Y. General Order No. 18, 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and N.D.N.Y. Local Rule 73.1.  (Dkt. Nos. 4, 6).

## I.     PROCEDURAL HISTORY

On July 19, 2018, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on May 23, 2017. (Administrative Transcript ("T") 203-204).  Plaintiff's application was denied initially on November 21, 2018, and his application for administrative reconsideration was denied on January 14, 2019. (T. 100-127).  Administrative Law Judge ("ALJ") Michael Schaefer granted plaintiff's request for a hearing and held an initial hearing by telephone conference on October 6,

2020. (T. 47-62).  The ALJ adjourned this hearing to allow plaintiff an opportunity to obtain representation. (T. 53-61).  Plaintiff obtained counsel and the ALJ held a telephonic hearing on February 23, 2021, during which plaintiff and vocational expert ("VE") Stuart Gilkison testified. (T. 63-98).  On April 21, 2021, the ALJ issued an order denying plaintiff's claim. (T. 10-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 2, 2021. (T. 1-6).

## II.   **GENERALLY APPLICABLE LAW**

### A.   **Disability Standards**

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently

engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at

448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was thirty-four years old on the date of his February 23, 2021 administrative hearing. (T. 70, 203). He had attended regular education classes in high school and joined the United States Army upon graduation. (T. 229, 1133). He served as an Army medic for approximately six years, including a thirteen month deployment to Iraq in 2006-07. (T. 76, 318, 1133, 1185). Following his honorable discharge, plaintiff graduated college with a Bachelor of Science degree in Information Systems. (T. 73, 229, 431). His non-military employment history includes jobs as a network

4

specialist for an information technology company and a community engagement assistant at a college. (T. 74-75, 229).  Plaintiff testified that he was terminated from his most recent employment due to attendance issues brought on by his mental health impairments. (T. 75).  A few weeks prior to his hearing, he had moved back to New York State in order to be closer to his family. (T. 70-71, 1160, 1166).

During his deployment to Iraq, plaintiff served as a trauma team leader and assistant head of a burn clinic treating injured soldiers and civilians, including children. (T. 318, 432).  This experience led to the development of post-traumatic stress disorder ("PTSD"), and he had participated in counseling at a Veterans Affairs Administration ("VA") clinic since 2011. (T. 318).  In 2017, plaintiff voluntarily entered an extended in-patient PTSD treatment program after experiencing suicidal thoughts on more than one occasion. (T. 318, 721).  By 2018, he reported improvement in his symptoms with continued outpatient therapy and medication, but he still regularly experienced sadness, anxiety, panic attacks and a desire to isolate from other people. (T. 1089, 1176).  These symptoms were particularly difficult to manage during the anniversaries of traumatic events from his childhood and military service. (T. 431-32).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

The ALJ first found that plaintiff met the insured status requirements for DIB through December 31, 2022, and had not engaged in substantial gainful activity ("SGA") since the alleged onset date of May 23, 2017. (T. 15).  At step two of the

sequential evaluation, the ALJ determined that plaintiff's PTSD and bipolar depression were severe impairments. (T. 16).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 16-18).

At step four, the ALJ found that plaintiff had the RFC to perform the full range of work at all exertional levels but had a number of nonexertional limitations. (T. 18-21).  Specifically, the ALJ found plaintiff:

> must avoid exposure to more than moderate levels of noise ("moderate" defined as that degree of noise in ordinary retail or office settings).  He must avoid even moderate exposure to workplace hazards (including moving machinery and unprotected heights).  Due to the claimant's mental impairments and symptoms, he can understand, remember, or carry out only simple instructions and routine tasks (at a GED Reasoning level of 2 or below) in a work environment with few, if any, changes in the work duties.  He is limited to a work environment with no fast-paced production quota or rate (any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota rather than assembly line work or other similar work).  He is capable of only occasional, brief and superficial, interactions with the public or co-workers and is capable of occasional interactions with supervisors.  He is precluded from work involving direct customer service.

(T. 18).  In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be

expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 19).

Next, the ALJ found that plaintiff was unable to perform any past relevant work. (T. 21). The ALJ then evaluated the VE testimony, and found that "[c]onsidering the [plaintiff]'s age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy" that plaintiff can perform. (T. 22). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date of May 23, 2017 through the date of the ALJ's decision. (T. 22-23).

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments:

1.   The ALJ lacked constitutional authority to decide plaintiff's claim because statutory restrictions on the President's ability to remove the Commissioner of Social Security, who appointed the ALJ, violate the separation of powers. (Plaintiff's Brief ("Pl.'s Br.") at 25-30) (Dkt. No. 12).

2.   The ALJ failed to properly evaluate the medical opinion evidence related to plaintiff's mental health impairments. (Pl.'s Br. at 16-25).

3.   The ALJ's RFC determination failed to properly consider plaintiff's use of a service dog. (Pl.'s Br. at 12-16).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence, and that any constitutional defects affecting the status of the Commissioner do not require remand of the ALJ's decision in this case.

(Defendant's Brief ("Def.'s Br.") at 7-33) (Dkt. No. 17).  Plaintiff filed a reply brief to

further address the ALJ's constitutional authority and RFC analysis. ("Pl.'s Rep. Br." at

6-15) (Dkt. No. 22).  For the reasons stated below, this court agrees with defendant and

will dismiss the complaint.

## DISCUSSION

## VI.    REMOVAL CLAUSE - SEPARATION OF POWERS

### A.    Legal Standards

"Under our Constitution, the executive Power – all of it – is vested in a President,

who must take Care that the Laws be faithfully executed."  *Seila Law LLC v. CFPB*,

___ U.S. ___, 140 S. Ct. 2183, 2191 (2020) (citing U.S. CONST. art. II, § 1, cl. 1)

(internal quotation marks omitted).  That includes the "power to remove . . . those who

wield executive power on [the President's] behalf."  *Id.*  Therefore, "as a general

matter," the Constitution gives the President the authority to remove those who assist

him in carrying out his duties," since "[w]ithout such power, the President could not be

held fully accountable for discharging his own responsibilities."  *Id.* (quoting *Free

Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 514

(2010)).

When Congress established the Consumer Financial Protection Board, ("CFPB")

in 2010, it provided that the CFPB director could only be removed for inefficiency,

neglect of duty, and malfeasance of office. 12 U.S.C. § 5491(c)(3).  In *Seila Law*, the

Supreme Court held that this statutory restriction violated the separation of powers by infringing on the President's removal power and was thus unconstitutional. *Seila Law*, 140 S. Ct. at 2197-2206. In *Collins v. Yellen*, ___ U.S. ____, 141 S. Ct. 1761 (2021), the Supreme Court reached the same conclusion with respect to the director of the Federal Housing Finance Agency ("FHFA"), "whom the President could remove only for cause." *Collins,* 141 S. Ct. at 1784 ("A straightforward application of our reasoning in *Seila Law* dictates the result here. The FHFA (like the CFPB) is an agency led by a single Director, and the Recovery Act (like the Dodd-Frank Act) restricts the President's removal power.").

> **B.    Analysis**

By statute, the Commissioner of the Social Security Administration is appointed for a term of six years, and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *See* 42 U.S.C. § 902(a)(3). Plaintiff contends that this removal restriction presents the same unconstitutional limitation on presidential power as the Supreme Court struck down in *Seila Law* and *Collins.* (Pl. Br. at 26). Defendant agrees with this interpretation of *Seila Law* and the general applicability of the separation of powers principle, but argues that this constitutional defect does not require remand of this case. (Def. Br. at 7) (citing memorandum by Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (July 8,

2021)).  While the Second Circuit has not yet addressed the issue, many courts in the

wake of *Seila Law* and *Collins* have held or assumed that the Social Security Act's

restriction on the President's removal power violates the separation of powers and is

unconstitutional.  *See, e.g., Kaufmann v. Kijakazi,* 32 F.4th 843, 849 (9th Cir. April 27,

2022); *see also Betty Jean B. o/b/o L.J.B. v. Kijakazi*, No. 6:21-CV-125 (ML), 2022

WL 873827, at *5 (N.D.N.Y. March 24, 2022) (collecting district court cases).

 Plaintiff goes further, however, and argues that the ALJ in this case derived his

power to hear and decide plaintiff's disability claim from a constitutionally defective

Commissioner. (Pl. Br. at 26).  According to plaintiff, the constitutional defect affecting

the removal of the Commissioner renders the ALJ's hearing and unfavorable disability

determination invalid, and similarly taints the subsequent administrative appeal process

and denial from the Appeals Council. (Pl. Br. at 27-30).

Several courts in this district have recently considered and rejected similar

arguments in the Social Security context.  *See Deborah M. v. Kijakazi*, No. 1:20-CV-

1600 (FJS), 2022 WL 2274780, at *3-4 (N.D.N.Y. June 23, 2022); *Betty Jean B.*, 2022

WL 873827, *5-7 (N.D.N.Y. Mar. 24, 2022); *Juliana Jolean A. v. Kijakazi*, No.

5:20-CV-1268 (BKS), 2022 WL 595361, *2-4 (N.D.N.Y. Feb. 28, 2022).  This court

agrees with their reasoning and likewise finds that plaintiff has not stated a cognizable

constitutional claim.  Even assuming the Commissioner's statutory tenure protection is

unconstitutional, plaintiff has not alleged facts entitling him to a remand for a new

hearing or any other relief.  *Deborah M.,* 2022 WL 873827, at *4; *Betty Jean B.,* 2022 WL 873827, at *6; *Juliana Jolean A.,* 2022 WL 595361, at *4.

All of the Commissioner's actions are not automatically invalid if the statutory removal restrictions are found to be unconstitutional.  *Collins,* 141 S. Ct. at 1788 n.23 ("[T]he unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."); *see also Satterthwaite v. Kijakazi,* No. 20-CV-0724, 2022 WL 468946, at *5 (W.D.N.C. Feb. 15, 2022) ("[U]nlike Appointments Clause defects, where the presiding official does not enjoy proper authority to occupy the office, agency action is not *per se* invalid simply because it can be traced back to an official subject to an unconstitutional removal protection.") (internal citation omitted).  Instead, the *Collins* decision held that in order to invalidate an agency action due to a violation of the removal power, plaintiff must show that the constitutional infirmity caused him compensable harm.  *See Collins,* 141 S. Ct. at 1788 (remanding for lower court to determine whether statutory restriction on removal of FEHB director inflicted compensable harm on shareholder plaintiffs); *Kaufmann,* 32 F.4th at 849 (explaining that "[a] party challenging an agency's past actions must . . . show how the unconstitutional removal provision actually harmed the party"); *Bhatti v. Fed. Housing Fin. Agency,* 15 F.4th 848, 854 (8th Cir. 2021) (identifying issue under *Collins* as whether unconstitutional removal restriction "caused compensable harm"); *Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1137 (9th Cir. 2021) (stating that, under

11

the "controlling" authority of *Collins*, "[a]bsent a showing of harm, we refuse to unwind the [agency] decisions below").

The likelihood of any DIB or SSI applicant making a showing of such harm from an infringement of the President's removal power is low. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("I doubt the mass of SSA decisions – which would not concern the President at all – would need to be undone."). In this case, plaintiff makes general reference to alleged injuries suffered from a "constitutionally illicit" administrative adjudication process that denied him benefits but establishes no nexus between the ALJ's denial and the alleged constitutional defect affecting the President's ability to remove the Commissioner. (Pl. Br. at 26-30). Because plaintiff has not plausibly alleged any connection between the denial of his disability claim and the alleged unconstitutional statutory tenure protection afforded to the Commissioner, this court denies plaintiff's request for remand on constitutional grounds.

The parties have also taken opposite sides of the question of whether the removal restrictions apply to the Acting Commissioner who ratified the appointment of the ALJ in this case. (Pl.'s Br. at 29-30) (Def. Br. at 8). District courts who have considered the issue have reached different conclusions. *See, e.g., Boger v. Kijakazi*, No. 1:20-CV-331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) ("Indeed, Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social

Security who could be removed from that office at the President's discretion."); *Tafoya v. Kijakazi*, No. 21-CV-871 (REB), 2021 WL 3269640, at *2 (D. Colo. July 29, 2021) ("In fact, the plain language of the Social Security Act . . . provides '[a]n individual serving in the office of the Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office' . . . . That language is broad enough to encompass an Acting Commissioner.") (internal citations omitted).  Because this court finds that the statutory removal restriction would never entitle this plaintiff to remand, it declines to determine whether the restriction applies to a particular Acting Commissioner.

## VII. <u>RFC/EVALUATING MEDICAL EVIDENCE</u>

### A. **Legal Standards**

#### 1. **Residual Functional Capacity**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B.    Summary of Medical Opinion Evidence

The record contains limited medical opinion evidence. There are no treating source opinions in the record, and no consultative examinations were performed. (T. 104, 108, 119, 122). The record includes a July 11, 2018 disability rating[1] decision from the VA. (T. 21, 199). The ALJ found this rating unpersuasive in summary fashion, but discussed plaintiff's VA medical records in detail as part of the disability determination. *See* 20 C.F.R. § 404.1504 (for claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits" but must consider the evidence underlying that decision); *see Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-942 (ML), 2020 WL 5848776, at * (N.D.N.Y. October 1, 2020)

---

[1] The VA assigns veterans a disability rating based on the severity of their disability. The rating is expressed as a percentage, representing how much the disability decreases overall health and ability to function. https://www.va.gov/disability/about-disability-ratings/

(noting that ALJ satisfied his regulatory requirements by discussing relevant VA medical records as part of RFC determination).

A summary of the only two mental health opinions evaluated by the ALJ, from non-examining state agency consultants Dr. Catherine Bard and Dr. Robert Barthell, is set out below. (T. 103-104, 109-111, 120-121, 123-125).

### 1.    Dr. Catherine Bard

Dr. Bard reviewed plaintiff's then-current medical records and prepared an opinion of plaintiff's functional limitations dated November 20, 2018. (T. 109-111). Based on that review, Dr. Bard opined that plaintiff had no limitations with regard to understanding or memory that would affect his ability to work. (T. 109). She further opined that plaintiff had some "moderate" sustained concentration and persistence limitations, namely: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.*)

In the accompanying narrative, Dr. Bard explained that:

While mental health-related stress might cause some reduction in his ability to sustain concentration, he reports an ability to sustain focus and concentration on favored activities, his hobbies. His productivity might be slightly reduced when compared to completely unimpaired individuals, he is able to complete tasks with as many as five steps. Less complicated tasks are apt to allow him to regroup, and resume productive work after breaks in his concentration.

(T. 110).

With regard to social interaction, Dr. Bard opined that plaintiff was moderately limited in his ability to interact with the general public and to accept instructions and respond appropriately to criticism from supervisors. (*Id*.)  In the accompanying narrative, Dr. Bard explained that plaintiff "relates well to his providers," and "describes ongoing friendships, but evidence shows a tendency of his to isolate from others and rely upon his service dog for support." (*Id.*)  In Dr. Bard's opinion, "[t]his suggests that he is best suited for work tasks that do not require frequent interactions with the general public," and "jobs that require only occasional collaboration with coworkers." (*Id.*)

In the area of adaptation, Dr. Bard opined that plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (T. 110)  She opined that plaintiff "may perform better in a work setting where the tasks are relatively routine and structured.  He is capable of following 3-step directives and completing unskilled tasks." (*Id*.)

### 2.  Dr. Robert Barthell

After plaintiff requested reconsideration of his DIB application, Dr. Barthell reviewed plaintiff's then-current medical records and prepared an opinion of plaintiff's functional limitations dated January 14, 2019. (T. 123-24)  Dr. Barthell indicated that plaintiff had not provided any new medical records since Dr. Bard's opinion but had provided updated information regarding his activities of daily living. (T. 121)  Based on that review, Dr. Barthell opined that plaintiff had intact memory function with no limitations in understanding or remembering information. (T. 123)  He further opined plaintiff was moderately limited in carrying out detailed instructions; maintaining

attention and concentration for extended periods; completing a normal workday and workweek without interruption from psychologically based symptoms; and performing at a consistent pace without an unreasonable number of rest periods. (*Id.*)  In the accompanying narrative, Dr. Barthell opined that plaintiff's overall attention might be affected by PTSD at times, but he was still able to carry out 3-4 step instructions continuously. (T. 124).

      With regard to social interaction, Dr. Barthell opined that plaintiff was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (*Id.*)  The psychological consultant explained that plaintiff "would do better on jobs that do not require frequent customer service interactions with general public" but was able to maintain "adequate interactions and relationships with coworkers and supervisors." (*Id.*)

      On the subject of adaptation, Dr. Barthell opined that plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (T. 124). He further opined that plaintiff "may perform better in a work setting where the tasks are relatively routine and structured," but was "capable of following 3-step directives and completing unskilled tasks." (*Id.*)

      Dr. Barthell summarized his overall opinion by stating that plaintiff retained the ability to "perform simple repetitive tasks on a sustained basis in a work setting with occasional contact with others and routine work place changes." (T. 124).

## C.    Analysis

### 1.    The ALJ Properly Evaluated the Medical Evidence and Had Substantial Evidence to Support the RFC Determination.

The ALJ found the opinions from Dr. Bard and Dr. Barthell to each be "generally persuasive" because they were "consistent with the medical evidence of record, which reflect a degree of stability in symptoms and improvement in the management of his symptoms with medication." (T. 21).  The ALJ further explained that he incorporated the consulting opinions into various parts of the RFC. (*Id.*)  For example, the ALJ found plaintiff was limited to simple and routine tasks without fast-paced production quota or rate work in light of the opined "moderate" limitations in concentration, persistence , or pace. (T. 21, 109, 123).  The RFC determination limits plaintiff to work involving only "occasional, brief, and superficial interactions with the public and coworkers," occasional interaction with supervisors, and no work involving direct customer service, to be consistent with the opined moderate limitations in social interaction. (T. 21, 110, 124).  Finally, the ALJ found plaintiff was limited to "routine tasks in an environment with few, if any, changes in the work duties" based upon the consultants' opinion that plaintiff had moderate limitations in the area of adaptation. (*Id.*)

As part of the RFC analysis, the ALJ also considered plaintiff's psychiatric treatment history, including his approximately month-long inpatient treatment for PTSD. (T. 19, 383-444, 721, 822).  The ALJ also recognized the documented improvement in plaintiff's mental status examination results, improved mood, and general stability of plaintiff's symptoms as he continued with treatment and his

providers adjusted his medication. (T. 20, 1089-90, 1187-88, 1134-1135, 1231). Although the record showed episodes of exacerbated anxiety symptoms, these typically coincided with anniversaries of traumatic events in his life and stressful situations such as plaintiff's divorce, the sale of his home, his move back to New York State and social isolation arising from the COVID-19 pandemic. (T. 431, 1100, 1134, 1160-1161).

In addition to plaintiff's treatment history, the ALJ also considered plaintiff's activities of daily living. (T. 19-20). After his discharge from inpatient treatment and improved management of his mental health symptoms, plaintiff consistently reported engaging in a number of social activities, including meeting others at a local hobby shop to play fantasy card and board games, group camping trips with family and friends, fishing, participating in Renaissance fair re-enactments, and team-based online gaming. (T. 19, 432, 1100, 1102, 1133).

Plaintiff raises a number of challenges to the ALJ's RFC determination, but none merit remand. He argues that the ALJ's RFC determination differed significantly from the only two medical opinions in the record, and asserts the ALJ failed to adequately explain the basis for these differences. (Pl. Br. at 17-18). First, the ALJ was not required to accept every limitation in the available medical opinions nor craft an RFC mirroring a particular opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.") Moreover, "there is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety." *Alexandrea R.R. v. Berryhill*, No. 5:18-CV-121

21

(DNH), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019) (citation omitted).  Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id.* (citation omitted).

In addition, plaintiff's challenge fails to identify the supposed significant differences between the consultants' opinions and the ALJ decision with regard to plaintiff's need for a routine and structured work setting and slower work pace, and ignores the similarity between the consulting opinions and the ALJ's RFC determination. (Pl.'s Br. at 18-21).  For example, Dr. Bard opined that plaintiff had no significant limitations in his ability to perform very short and simple tasks, and that less complicated tasks would allow plaintiff to successfully "regroup" and resume work after breaks in concentration. (T. 109-110).  Dr. Barthell opined plaintiff could carry out three or four step instructions despite having his overall attention affected by PTSD symptoms. (T. 124).  The ALJ incorporated these limitations by finding that plaintiff could perform "simple instructions and routine tasks" with "few, if any changes in the work duties" and excluding fast-paced assembly line work.  (T. 18).  The ALJ similarly incorporated limitations on social interaction to avoid frequent interactions with the general public or coworkers, consistent with the opinions from Dr. Bard and Dr. Barthell. (T. 18, 110, 124).

The ALJ thus appropriately incorporated the non-examining consultants' opinions into the RFC determination, along with objective medical evidence from treatment notes post-dating the two opinions, as well as plaintiff's documented regular activities. *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL

3145694, at *4 (W.D.N.Y. July 26, 2021) ("Here, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination.") (citing *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3. (2d Cir. 2021)); *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms).

By limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with plaintiff's difficulties with concentration, pace, and social interaction. *See Michael C. v. Berryhill*, No. 17-CV-1395, 2019 WL 1228553, at *5-6, (N.D.N.Y Mar. 15, 2019) (holding that the ALJ properly accounted for the claimant's moderate limitations in maintaining a regular schedule by "providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting"); *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N. Y. 2017) ("it is well-settled that a limitation to unskilled work . . . sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), appeal dismissed (Mar. 30, 2018) ("[I]t is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning."); *Sipe v. Astrue*, 873 F. Supp. 2d 471, 481 (N.D.N.Y. 2012) (holding that moderate limitations "relating to instructions, concentration, [and] attendance" are consistent with unskilled work).

Finally, plaintiff argues that the ALJ's RFC determination was inconsistent with his earlier finding of "moderate limitations" in the "paragraph B" criteria of social

interaction, concentration, persistence, pace, and adaptation at step three of the sequential analysis. (Pl.'s Br. at 16-18)  It is well-established that an ALJ is not required to explicitly include the "paragraph B" findings in his RFC assessment or hypothetical to the VE.  *Plumley v. Comm'r of Soc. Sec.*, No. 5:15-CV-1229 (GTS/WBC), 2016 WL 7644866, at *9 (N.D.N.Y. Dec. 8, 2016), report and recommendation adopted, 2017 WL 44842 (N.D.N.Y. Jan. 4, 2017) (citing *Huestis v. Comm'r of Soc. Sec.*, No. 2:13-CV-201, 2014 WL 4209927, at *5 (D. Vt. Aug. 25, 2014); *see also* SSR 96-8p, 1996 WL 374184, *4 (Jul. 2, 1996).  More crucially, the ALJ's RFC analysis addressed each of these areas in detail, and his conclusions regarding social interaction, concentration, persistence, pace, and adaptation were supported by substantial evidence drawn from the totality of the record, as summarized above. (T. 21).

### 2. The ALJ's Failure to Evaluate the Medical Necessity of Plaintiff's Service Dog is Harmless Error.

There is record evidence that plaintiff has a service dog to help him calm down during panic attacks and act as a barrier when other people approach. (T. 925, 930).  In January 2017, plaintiff reported that his employer had allowed him to bring the dog to work with him, but this arrangement appears to have been in place just a short time before plaintiff's termination from the position. (T. 75, 252, 931).  In June 2017, plaintiff reported that the dog helped him "quite a bit" with his anxiety and PTSD symptoms, and he was allowed to keep the dog with him during part of his inpatient PTSD treatment. (T. 336-337, 721, 823).

The ALJ's decision never discusses plaintiff's service dog. (T. 18-21).  Plaintiff is correct that the ALJ erred by omitting any discussion of the service animal, but this

court finds that such error was ultimately harmless because plaintiff did not meet his burden to show that the service animal was medically necessary.  To begin with, there is no evidence that any treatment provider prescribed or formally recommended the use of a service dog.  *Cf. Rentfro v. Colvin*, No. 14-CV-3015, 2015 WL 12868081, at * (C.D. Ill. Oct. 21, 2015) (remanding where treatment notes show psychiatrist prescribed or recommended use of service animal).  Plaintiff's counsel states that the VA provided plaintiff with the service animal, but there is no prescription or formal recommendation in the record. (Pl.'s Br. at 14; Pl.'s Rep. Br. at 7).  Treatment notes suggest that the dog successfully completed some training as a service animal, but it is unclear from the administrative record whether the dog was trained in a formal program or trained at home by plaintiff's former wife. (T. 238, 336, 924).

In addition, although Dr. Bard referenced plaintiff's use of a service dog, no medical opinion in the record suggested that the animal's presence was necessary for plaintiff to function in the workplace. (T. 110).  Likewise, although multiple treatment notes make general reference to the service dog and occasionally include plaintiff's description of the benefits he derives from caring for and interacting with the animal, there is no evidence in the record that the dog was ever made part of a formal treatment plan. (T. 264, 336, 721, 723, 841, 854, 916, 931, 1007, 1067, 1131, 1187).  Indeed, after plaintiff's symptoms improved with continued therapy and adjusted psychiatric medication, the record includes fewer references to plaintiff's reliance on the service dog at medical appointments or social settings, and increased references to plaintiff's reliance on alternate coping strategies that he learned during treatment. (T. 336, 1090, 1097, 1103, 1196).

In finding harmless error in this case, this court is following the majority of the district courts to consider this issue. *See, e.g., Natividad v. Comm'r of Soc. Sec.*, No. 1:20-CV-1507, 2022 WL 2718511, at *4 (W.D.N.Y. July 13, 2022) (finding ALJ's failure to consider service dog mentioned throughout record was harmless error because plaintiff had not been prescribed a service animal and dog was not part of any formal plan of care); *Tiffany B. v. Kijakazi*, No. 1:20-CV-2696, 2022 WL 224817, at *6 (S.D. Ind. January 26, 2022) (finding ALJ's failure to discuss service animal was harmless error due to a lack of evidence that the animal was required for plaintiff to be able to work); *McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87-88 (D. Mass. July 2, 2019) (finding ALJ's failure to include service dog as part of RFC to be harmless error because "the use of a service dog must be medically necessary to be considered in an RFC assessment"); *Hudson v. Berryhill*, No. 3:17-CV-29, 2018 WL 1092487, at *12 (D. Or. Feb. 28, 2018) ("[E]ven if the Court construed [the treating physician's] letter as an opinion that Plaintiff's symptoms would improve if he had a companion animal at work, the letter is not an assessment that Plaintiff lacks the capacity to function without an animal."); *Payano v. Colvin*, No. 2:15-CV-00294, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) (finding ALJ's omission of service dog from RFC determination to be harmless error where the evidence failed to support that a service dog was necessary for plaintiff to work).

The court will address one final point raised in plaintiff's briefs. In arguing for remand, plaintiff's counsel cites my previous memorandum-decision in *Christian J. v. Comm'r of Soc. Sec.*, No. 6:18-CV-1004 (ATB), 2019 WL 6840130 (N.D.N.Y. Dec. 16, 2019), but misrepresents its holding. (Pl.'s Br. at 15; Pl.'s Rep. Br. at 7). In *Christian*

*J.*, the ALJ had "specifically analyzed" the medical necessity of plaintiff's service dog, and this court found the ALJ had substantial evidence to exclude the service animal from the RFC determination. *Id.*, at 2019 WL 6840130 at *9. Plaintiff's counsel incorrectly argues that I actually remanded *Christian J.* in light of the ALJ's failure to explain why she rejected evidence that plaintiff's dog "helped him 'keep calm in stressful situations' and had been 'through everything' with him." (Pl.'s Br. at 15). The language quoted by plaintiff's counsel is not from this court's decision in *Christian J.*, but does appear in an unrelated case before a different district court. *See Cruz v. Comm'r of Soc. Sec.*, 406 F. Supp.3d 1337, 1347 (M.D. Fla. Sept. 11, 2019). I point out counsel's error only to correct his description of my prior decision. Counsel's errant citation did not impact my decision in this case.

   **WHEREFORE**, based on the findings above, it is

   **ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

   **ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated:        November 1, 2022

_____
Andrew T. Baxter
U.S. Magistrate Judge